640 So.2d 460 (1994)
STATE of Louisiana, Plaintiff-Appellee,
v.
William PYKE, Defendant-Appellant.
No. CR93-1506.
Court of Appeal of Louisiana, Third Circuit.
May 4, 1994.
*461 Richard W. Vidrine, Ville Platte, for State of Louisiana.
John Larry Vidrine, Ville Platte, for William D. Pyke.
Before GUIDRY, DOUCET and COOKS, JJ.
COOKS, Judge.
William Pyke was tried on a charge of attempted second degree murder in violation of LSA-R.S. 14:30.1 and 14:27. He was convicted as charged by an eleven to one verdict, and sentenced to serve 50 years at hard labor. We reverse.

FACTS
On February 21, 1992, Bryan Babineaux accompanied by several friends drove from Opelousas to Ville Platte for a night on the town. A fight commenced after closing time outside the Happy Hour Bar between individuals from Opelousas and several local residents. Babineaux was involved in a fistic exchange with two or three individuals. While Babineaux was lying on the street overcome by blows he sustained, another individual walked up and shot him in the back. Babineaux and several other individuals identified the shooter as William Pyke.

ASSIGNMENT OF ERROR NUMBERS 1 AND 3
Defendant originally assigned as error the trial court's exclusion of a witness' testimony; and he further attacked the sufficiency of the evidence presented to support his conviction. These assignments were not briefed on appeal; and they were specifically abandoned by defendant. Therefore, we will not address the assignments in accordance with Uniform RulesCourts of Appeal, Rule 2-12.4.

ASSIGNMENT OF ERROR NUMBER 2
By this assignment of error, defendant contends the trial court erred in not charging the jury that the state must prove he had a specific intent to kill the victim, as opposed to a specific intent to inflict great bodily harm.
The trial judge instructed the jury that an essential element of the attempted second degree murder charge was a specific intent to kill or inflict great bodily harm. *462 This instruction was erroneous because a specific intent to inflict great bodily harm is not an element of the crime of attempted second-degree murder. The statutory definition of the crime requires specific intent to kill; and defendant's "specific intent to cause serious bodily harm will not suffice." State v. Strother, 362 So.2d 508 (La.1978); State v. Butler, 322 So.2d 189 (La.1975).
From the start of trial, the court emphasized to the jury proof of specific intent to commit great bodily harm was sufficient alone to convict Pyke of attempted second degree murder. In his preliminary instructions to the jury, the trial judge stated:
"Now first of all I'm going to read to you what the pertinent parts of second degree murder article are that pertains to this case. I don't have to read the whole article because the rest of it does not pertain to this case. "Second degree murder is defined in Louisiana Revised Statute 14:30.1 as follows: `Second degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm.' Alright. Then we have to go to the attempt article which is contained in Louisiana Revised Statutes 14:27 which defines attempt. `Any person who, having specific intent to commit a crime, does or omits an act for the purpose of and tending directly towards the accomplishing of his object is guilty of an attempt to commit the offense intended, and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose."
Later, in closing arguments the State repeated the erroneous definition of the charge by stating:
"We know what second degree murder is. Its the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm. The question in this case is very simply put. Was Bryan Babineaux of William Pyke? In other words, did William Pyke try to kill him? Try to do great bodily harm? The answer is yes. No question about it."
Reversible error unquestionably occurred when the trial judge instructed the jury as follows:
"In order to define attempted second degree murder, we must first define second degree murder. Louisiana Revised Statute 14:30.1 of the Criminal Code of Louisiana defines second degree murder as follows:
`Second Degree Murder is the killing of a human being:
(1) When the offender has a specific intent to kill or inflict great bodily harm.'
The following are the essential facts required to be proved beyond any reasonable doubt in order to justify a verdict of guilty of Second Degree Murder:
1) That the defendant, William D. Pyke, attempted to kill Bryan Babineaux;
2) That the defendant, William D. Pyke, acted with the specific intent to kill or to inflict great bodily harm.

It says kill, but it should say `attempted to kill Bryan Babineaux.' That would be the street definition of second degree murder but I will define the attempt, too." (Emphasis added).
Defendant, however, failed to object to this erroneous instruction at trial as required by Louisiana Code Criminal Procedure article 841. Absent a contemporaneous objection, ordinarily a defendant may not complain of an erroneous charge to the jury on appeal. However, Louisiana courts have recognized certain rights are so basic and "due process" requirements mandate that they may be asserted for the first time on appeal or noticed as an error patent by mere inspection of the pleadings and proceedings. La.C.Cr.P. article 920(2); State v. Thomas, 427 So.2d 428 (La.1982). Further, Louisiana Constitution Article I § 21 and Louisiana Code of Criminal procedure article 930.3(1) permit a defendant by habeas application to seek relief on the grounds that his conviction was obtained in violation of the Constitution of the United States or the State of Louisiana. These provisions preempt the statutory contemporaneous objection requirement of Louisiana Code of Criminal procedure article 841. The Official Revision Comment to Louisiana Code of Criminal Procedure article 841 recognizes "[o]f course, certain rights are so basic that they can be raised for the first *463 time in the motion in arrest of judgment (Art. 859), in an application for a writ of habeas corpus (Art.362), or in a motion for new trial (Art. 851)." Though Louisiana courts have consistently rejected adoption of a general "plain error" rule in reviewing criminal cases on appeal, still they have recognized certain exceptions to the contemporaneous objection rule. An exception has been applied in several cases where the error involves the very definition of the crime and "the record bears full and sufficient proof of the error which no posterior hearing could augment." State v. Williamson, 389 So.2d 1328 (La.1980). Deciding to depart from a long line of cases which held erroneous jury instructions are not reviewable on appeal, absent a contemporaneous objection, the Louisiana Supreme Court in State v. Williamson, 389 So.2d 1328 (La.1980) said:
"Nonetheless it is within the province of this reviewing court to entertain complaint of Constitutional violations on appellate review notwithstanding that consideration of such complaint more often than not is deferred until filing of a writ of habeas corpus. This Court's usual pretermission of such issues stems from the need of an evidentiary hearing which can only be had incident to the writ of habeas corpus. The record before us, however, bears full and sufficient proof of the error which no posterior hearing could augment. For this reason, the need for delay is obviated.
* * * * * *
Furthermore to defer consideration until defendant were to file a writ of habeas corpus would only serve to prolong the occasion when defendant might again be tried, with resultant prejudice to the state's opportunity to reassemble its witnesses and evidence. For these reasons we find it preferable now to reverse defendant's conviction and sentence and order him retried.
Because reversal of defendant's conviction results not from evidentiary insufficiency but from trial court error, and upon defendant's urging in brief on this appeal, he is subject to being retried for attempted second degree murder, the crime of which convicted. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)."
In Williamson, supra., the defendant was chasing and shooting at another car occupied by several people. One of the shots hit the victim who later died. He was charged with attempted first degree murder; and the jury returned a verdict of attempted second degree murder. The jury instructions contained the wrong definitions of the charged and responsive crimes. The trial judge, the prosecutor, and the defense counsel were unaware the definitions of the crimes had been changed 19 days before the shooting. Reversing defendant's conviction, the Supreme Court found "[i]n the case at hand the asserted error involves the very definition of the crime of which defendant was in fact convicted;" and it concluded "[s]uch an error is of such importance and significance as to violate fundamental requirements of due process." Following this decision, the Supreme Court rendered two cases which seemingly abandoned the Williamson holding. In State v. Belgard, 410 So.2d 720 (La.1982) defendant was convicted of attempted second-degree murder. He shot the victim four or five times at point blank range. The jury instructions included erroneous references to a specific intent to inflict great bodily harm. Defendant did not contemporaneously object to the infirmed instructions. Without mentioning the Williamson exception, the Supreme Court refused to consider the assigned error stating in a single sentence "... defendant did not object to this instruction at trial, and it is not reviewable on appeal." Again refusing to apply the Williamson exception in State v. Thomas, 427 So.2d 428 (La.1982), the Supreme Court said:
"We express no opinion on whether this court will again grant review under the unique facts of Williamson, but leave that as an open question. However, Williamson should not be construed as authorizing appellate review of every alleged constitutional violation and erroneous jury instruction urged first on appeal without timely objection at occurrence. This court has not created or recognized a plain error rule of general application."
*464 We too declined to apply the Williamson exception in State v. Latiolais, 453 So.2d 1266 (La.App. 3rd Cir.1984), writ denied, 458 So.2d 125 citing State v. Belgard and Chief Justice Calogero's concurring opinion in which he mentioned Williamson and noted:
"This case is distinguishable from Williamson. There was no recent legislative change in the legal definitions of the crime charged of which the trial judge and trial attorney were oblivious. Nor is it apparent from the record that the jury mistakenly applied the law, despite the fact that they may have been given an erroneous impression from the wording of the judge's charge. Application of this contemporaneous objection rule is designed for just such a case as this. Defendant cannot neglect to afford the trial judge an opportunity to correct the charge, take his chance on a jury acquittal, then complain after conviction of the error." (Emphasis Added).
Obviously seizing on the italicized language used in Belgard, the Latiolais majority concluded sufficient evidence existed to find he had a specific intent to kill the victim; and, thus, it appeared "the jury did not mistakenly apply the law" despite the erroneous jury instruction. The particular facts in Latiolais evidenced the defendant repeatedly stabbed the victim with a screwdriver in the chest, under the arm, in the neck, and in the left temple. The stab in the left temple blinded the victim for life. After pulling the victim from his truck, Latiolais also tried to push the screwdriver in the back of the victim's head. Our analysis in Latiolais apparently turned on a factual determination that the record contained sufficient evidence of defendant's specific intent to kill which obviated the likelihood that the jury's verdict was based on the tainted portion of the instruction. Although the Supreme Court did not comment on this Court's "weight of evidence" approach in deciding when to apply the Williamson exception, in State v. Arvie, 505 So.2d 44 (La.1987) it reaffirmed the applicability of the exception in certain cases and particularly stated "[o]ne could hardly imagine an error which more seriously effects the fairness of a judicial proceeding or which is more prejudicial to the fundamental rights of an accused than a jury instruction which incorrectly defines the crime with which the accused is charged." See also State v. Green, 493 So.2d 588 (La.1986) cited and discussed in State v. Arvie, supra.
Recently, in State v. Holmes, 620 So.2d 436 (La.App. 3rd Cir.1993), seemingly fine tuning the "weight of evidence" approach employed earlier in Latiolais, this court decided to reverse defendant's conviction and sentence because an erroneous instruction identical to that at issue was given to the jury by the trial judge. Even though, the evidence was sufficient for the jury to find Holmes specifically intended to kill the victim by shooting into the victim's vehicle with a high velocity rifle, the decision did not rest on this factual determination. Instead, this Court reversed Holmes' conviction and sentence concluding he was not afforded a "fair trial" under the circumstances. Specifically, the majority noted Justice Lemmon, concurring in Williamson, observed "... an affirmation, essentially based on the pragmatic notion that the jury reached the right result on the wrong instructions, simply does not comport with basic concepts of due process." While the opinion questioned "whether the jury would have convicted had it known it had to find a specific intent to kill" and distinguished the facts in Holmes from those presented in Belgard and Latiolais, in the end it squarely recognized that "fundamental fairness and judicial economy" compelled reversal of Holmes' conviction. Shortly after this decision, in State v. Porter, 626 So.2d 476 (La.App. 3rd Cir.1993), this court again reversed a defendant's attempted second degree murder conviction because the trial judge's jury instruction incorrectly included references to a specific intent to inflict great bodily harm. The evidence in Porter revealed during a heated argument, he pulled out a knife; lunged over the back seat of car where the victim was seated; and proceeded to stab the victim fourteen times.
In final analysis, this court's reluctance in Latiolais (shared by the Supreme Court in Belgard and Thomas) to adopt a plain error rule generally applicable in criminal cases has resulted in obvious inconsistencies in the jurisprudence which are not intelligently explainable or distinguishable. Our jurisprudential dilemma, however, is not without solution.
*465 An instruction which misleads or confuses the jury as to an essential element of the offense is constitutionally infirmed. The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Thus, "[w]hat the factfinder must determine to return a verdict of guilty is prescribed by the Due Process Clause." Sullivan v. Louisiana, ___ U.S. ___, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The state always bears the burden of proving all elements of the offense charged; and it must persuade the factfinder beyond a reasonable doubt of the facts necessary to establish each of those elements. Patterson v. New York, 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977); Leland v. Oregon, 343 U.S. 790, 795, 72 S.Ct. 1002, 1005, 96 L.Ed. 1302 (1952). In Re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970); Cool v. United States 409 U.S. 100, 104, 93 S.Ct. 354, 357, 34 L.Ed.2d 335 (1972) (per curiam). Due process also assures defendant "the right to have the jury, rather than the judge, reach the requisite finding of `guilty.'" Sullivan v. Louisiana, supra.
Although, the United States Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) recognized "certain constitutional errors, no less than other errors, may have been `harmless' in terms of their effect on the factfinding process at trial, ... some errors though will always invalidate the conviction." In deciding which category the present error falls, Sullivan teaches our inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered," but rather whether the guilty verdict actually was not attributable to the error. As the United States Supreme Court explained this "must be so, because to hypothesize a guilty verdict that was never in fact renderedno matter how inescapable the findings to support that verdict might bewould violate the jury-trial guarantee." Sullivan v. Louisiana, supra ___ at U.S. ___, 113 at S.Ct. 2082. In assessing whether a particular defendant's due process rights were violated, an appellate court should not engage in speculation about a hypothetical jury's finding on an essential element of the offense charged. The "specific intent to inflict bodily harm" error in this case must be likened to the "beyond-a-reasonable doubt" error which the United States Supreme Court in Sullivan determined is "structural" and vitiates all the jury's findings.
Evident from our attempts to distinguish the holdings in prior cases, determining what a reasonable jury might have done in instructional error cases involving the definition of the crime necessarily interjects speculation in the reviewing process and results in "the wrong entity judg[ing] the [defendant's guilt]." Sullivan v. Louisiana, supra. Classifying the erroneous instruction given in this case as a "structural error" does not require abandonment of the statutory contemporaneous objection rule nor adoption of a plain-error rule generally applicable in criminal cases. Rules generally are not without exceptions; and they must yield to state and federal due process requirements. The Williamson exception (though adequate to protect a defendant's due process rights) must be applied in all cases involving these errors without "weighing the evidence" or resorting to a "case by case" factual analysis. The concomitant due process right to "trial by jury" prevents use of the latter approaches on appellate review.
Pyke's conviction and sentence must be reversed sooner or later. Our decision to entertain the assigned error on appeal is consistent with the Williamson holding and the more recent cases applying it. Notwithstanding the holdings in Belgard, Thomas, and Latiolais, we conclude instructional errors involving the very definition of the crime charged so threatens a defendant's basic due process rights that they compel reversal of Pyke's conviction and sentence.
For the foregoing reasons, defendant's conviction and sentence are reversed and the case is remanded to the trial court for retrial.
REVERSED AND REMANDED.
GUIDRY and DOUCET, JJ., concur in the result.