683 So.2d 1309 (1996)
STATE of Louisiana
v.
Kenneth TAYLOR
No. CR96-320.
Court of Appeal of Louisiana, Third Circuit.
November 6, 1996.
*1310 Michael Harson, Robin R. Rhodes, Lafayette, for State.
Robert J. Hildum, Lafayette, for Kenneth Taylor.
Kenneth Taylor, pro se.
Before YELVERTON, KNOLL and SULLIVAN, JJ.
SULLIVAN, Judge.
On November 10, 1994, the defendant, Kenneth Taylor, was indicted on the charge of attempted first degree murder, in violation of La.R.S. 14:27 and 14:30. Specifically, Taylor was charged with attempting to kill a peace officer engaged in the performance of his lawful duties. Taylor was tried by jury, and on August 15, 1995, was found guilty of the responsive verdict of attempted manslaughter, a violation of La.R.S. 14:27 and 14:31. The district court sentenced the defendant to twelve years at hard labor on December 5, 1995. Taylor's defense counsel, Harold Savoie, made an oral motion for appeal of the conviction and sentence at that time.
The defendant filed his written motion for appeal on December 12, 1995. Two days later, attorney Savoie filed a motion to withdraw. The district court denied this motion, citing the pending appeal. The defendant filed a pro se brief with this court on March 22, 1996, assigning the following errors on appeal:

*1311 1. The evidence was insufficient to convict defendant of attempted manslaughter;
2. The trial court erred in overruling defense counsel's objection to the testimony of Lafayette Police Department Officer Nolvey Stelly;
3. The trial court erred in instructing the jury on the definition of attempted manslaughter in the original jury charges and the second reading requested by the jury;
4. The trial court erred on re-reading the charges, in failing to state that the crime of attempted manslaughter requires a specific intent to kill and in omitting the responsive verdict of not guilty;
5. The trial court erred in giving an erroneous reasonable doubt instruction in the jury charge;
6. The trial court erred in denying defendant's oral motion for continuance on the day of sentencing;
7. The sentence imposed was excessive; and
8. Errors patent on the face of the record.
Attorney Savoie filed a brief on March 25, 1996, wherein he assigned as error the insufficiency of evidence. Subsequently, Taylor's family hired Attorney Robert Hildum to handle this appeal. Savoie and Hildum then filed a joint motion to withdraw and enroll as counsel, respectively. This court granted the motion, thereby removing Savoie and enrolling Hildum as counsel of record. On April 19, 1996, Hildum filed a supplemental brief on behalf of Taylor in which he reiterated Taylor's pro se assignments of error concerning the definition of the crimes and asserted that Taylor had ineffective assistance of counsel at trial.
After reviewing the record in its entirety, we conclude that the trial court erred in failing to instruct the jury that the crime for which Taylor was convicted, attempted manslaughter, required a finding of specific intent to kill a human being. Under the facts of this case, the error is not harmless. Therefore, we remand this case to the trial court for a new trial.

FACTS
At about 9:00 p.m. on September 28, 1994, Police Officers Nolvey Stelly and Reginald Mosely were on bicycle patrol in the area of Gilman and Bossier Streets in Lafayette. The officers were attired in bike patrol police uniforms. The officers saw a small grey Toyota Corolla stopped in the street and two female pedestrians standing near the car talking to the car's occupants. The car's engine was running. Suspicious, the officers made a flanking approach from the rear of the vehicle, with Officer Stelly on the driver's side and Officer Mosely on the passenger side. Officer Mosely positioned himself in front of and to the right of the car's right front fender, near the edge of the right side of the street. Officer Stelly tapped on the car's partially-raised window and identified himself as a policeman.
The driver, Kenneth Taylor, cut his wheels to the left and accelerated, knocking Officer Stelly over. The defendant then cut his wheels to the right, striking Officer Mosely's bicycle tire and propelling him onto the car's hood. Taylor continued to accelerate while zigzagging a block and a half, with Officer Mosely on the hood hanging onto the driver's side windshield wiper. As Taylor took a sharp right turn onto Bossier Street, the wiper broke off. Officer Mosely fell off the hood and landed in the street, sustaining leg injuries. The defendant continued to accelerate away. He was later arrested and charged with attempted first degree murder.
At trial, Officer Stelly testified that he and Officer Mosely were assigned to the Lafayette City Police ACTION (Attacking Crime Through Involvement in Our Neighborhoods) program's bicycle patrol, which is designed to curb drugs and prostitution in high crime areas of the city. Upon approaching the car parked in the roadway of Gilman Street, the officers became suspicious that a transaction might be taking place. According to Officer Stelly, he tapped on the driver's side window, identified himself as an ACTION squad officer, and asked Taylor for his driver's license. Officer Stelly explained that, as he and Taylor made eye contact, Taylor revved *1312 the car's engine and accelerated toward the left, knocking Officer Stelly to the ground. Taylor then steered the car to the right and struck Officer Mosely with the car's right front bumper. Officer Mosely landed on the car's hood and windshield. Officer Stelly stated that Taylor continued to accelerate the car and drive it from left to right along Gilman Street until he took a sharp right turn onto Bossier Street. At that point, Officer Mosely fell from the hood of the car. Officer Stelly estimated that Taylor had reached a speed of approximately forty miles per hour with Officer Mosely on the car hood.
Officer Mosely testified that, when he and Officer Stelly approached the parked car from the rear on Gilman Street, he positioned himself in front of and to the right of the car in an attempt to visually identify the car's occupants. As he did so, Officer Stelly tapped on the window and identified himself as being with the Lafayette City Police ACTION unit. Immediately, according to Officer Mosely, the car sped to the left then to the right in his direction. The front of the car hit the tire of his bike squarely, and he was thrown over the bike and onto the hood of the car. Before the car made contact, Officer Mosely saw Taylor "look dead at me." Officer Mosely stated that, for the entire time he "rode" on the hood, he yelled for Taylor to stop the car. He said that, at the time, he was wearing a cycling helmet with the word "POLICE" clearly visible on its front end. He estimated that Taylor reached a speed of forty miles per hour before throwing him from the hood. Officer Mosely testified that he landed in the roadway a distance of 253 feet away from the point of initial contact. He suffered injuries to his right ankle lateral ligaments, knee, and back. Officer Mosely explained that he was released to return to light duty work in February 1995 but still had to go to therapy afterwards.
On cross-examination, Officer Mosely stated emphatically that he did not position his bicycle directly in front of the path of the car. He explained that, while on the hood, he attempted to draw his gun but did not get it out of its holster.
Cynthia Menard testified that she witnessed the incident as she was walking on Gilman Street. Her testimony corroborated that of the officers. She stated that, while Officer Mosely was on the hood of the car, the driver did not attempt to decelerate or stop the car. On cross-examination, she admitted that, at the time of trial, she was incarcerated for a probation violation related to her conviction for attempted possession of cocaine. She denied making a deal with the prosecutor in exchange for her testimony against Taylor.
Vanessa Cahee testified that she witnessed the incident while walking with her uncle near the corner of Gilman Street and Bossier Street. She stated that she saw a black man and a white man in the car that struck Officer Mosely. The black man was driving the car. According to Cahee, the car could have traveled in a different direction besides the one taken which led to the collision with Officer Mosely's bicycle. Cahee stated that she has known Officer Mosely since he began patrolling the area. She also explained that she knows Taylor and his family and was reluctant to testify against him. On cross-examination, Cahee admitted that she had smoked crack cocaine on the night of the incident. She also acknowledged that, when she initially gave a statement to the police, she said that Officer Mosely tried to get in front of the car to stop it and that the driver of the car was white. She explained that she was nervous when she gave the statement and that her testimony at trial constituted the accurate account of what she saw. Cahee also admitted that, at the time of trial, she was incarcerated but had made no favorable deals with the prosecutor in exchange for her testimony against Taylor.
Brian Wampold, the passenger in the car, also testified on behalf of the state. He explained that the Toyota belonged to him and that he had let Taylor drive it because he was unfamiliar with the area. He recalled leaning back in the reclined passenger seat as Taylor spoke to two females who were standing outside the passenger-side door. Wampold said that he then heard someone say "Halt" or something similar, then Taylor sped off in the car. He looked up and saw *1313 Officer Mosely on the hood hollering for Taylor to stop the car. Wampold stated that Taylor drove the car from right to left in a swerving manner then took a sharp right turn which threw Officer Mosely from the hood. Taylor then drove about a block; he then stopped the car, jumped out, and ran off. Wampold then drove the car toward Congress Street and was stopped by a Sheriff's deputy. He was arrested and charged with accessory after the fact to attempted first degree murder. Wampold acknowledged that, in exchange for his testimony against Taylor, the district attorney agreed to dismiss the charge against him.
Taylor testified in his defense. He said that he had met Wampold on his way home from work and that Wampold was looking for drugs. They stopped the car on Gilman Street near the edge of the sidewalk to talk to two girls. According to Taylor, Officer Stelly tapped on his window and said "Pull the damn car on the side of the road." Taylor said he got nervous and immediately began to accelerate the car. The next thing he knew, Officer Mosely had jumped onto the hood from his bike and was attempting to pull his gun. Taylor "freaked out" because he thought Officer Mosely might try to shoot him through the windshield. He began swerving the car from side to side then turned right onto Bossier Street.
Taylor said he became scared because he did not know if the cyclists were trying to rob them or were possibly the girls' husbands. He denied that he consciously directed the car toward Officer Mosely, and he stated that Officer Mosely was positioned in front of the car before the collision. He also denied any intent to kill or to do great bodily harm to Officer Mosely.
Gaynell James testified on behalf of Taylor. She stated that, while she was crossing Gilman Street, Taylor stopped the Toyota and began speaking with her. She said that the white policeman (Officer Stelly) approached the car and instructed Taylor to pull the car over. James also said that Officer Stelly cursed at Taylor. When Taylor disobeyed Officer Stelly's instructions and accelerated the car, James turned and ran off. She did not see Officer Mosely on the car's hood.
The defense also presented the testimony of Eddie Flugence, who claimed that he had spoken to prosecution witness Vanessa Cahee on the morning of the trial. According to Flugence, Cahee told him that she knew nothing about the incident and that she was not at the corner of Gilman Street and Bossier Street at the time of the incident. The trial court allowed Flugence to testify over the hearsay objection of the prosecution.

SUFFICIENCY OF THE EVIDENCE
In his first pro se assignment of error, defendant maintains that the evidence adduced at trial was insufficient to support the resulting conviction for attempted manslaughter. In State v. Hearold, 603 So.2d 731, 734 (La.1992), the Louisiana Supreme Court reasoned as follows:
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot.
On the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a *1314 new trial. If the reviewing court determines there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused must receive a new trial, but is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988).
(Footnote omitted.)
We shall therefore first review the sufficiency of the evidence. When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and therefore the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, 436 So.2d 559, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. Taylor was convicted of attempted manslaughter. The manslaughter statute, La.R.S. 14:31, provides, in pertinent part:
A. Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; ...
Additionally, La.R.S. 14:27 defines attempt, in pertinent part, as:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt;...
In order to obtain a conviction for attempted manslaughter, the state must prove beyond a reasonable doubt that the defendant possessed the specific intent to kill, a finding which is not necessary to support a manslaughter conviction. State v. Porter, 626 So.2d 476 (La.App. 3 Cir.1993); State v. Salone, 605 So.2d 229 (La.App. 2 Cir.1992). La.R.S. 14:10(1) defines specific criminal intent as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Therefore, in the case sub judice, the prosecution had to prove from the circumstances that Taylor actively desired to commit a homicide, i.e., "the killing of a human being," and did or omitted an act tending directly toward the killing.
The testimony and evidence presented at trial, when viewed pursuant to the Jackson standard in the light most favorable to the prosecution, was sufficient to support the conviction of attempted manslaughter. Officers Stelly and Mosely identified Taylor as the driver. The officers, along with Menard and Cahee, indicated that Taylor had room to drive away without turning the car toward Officer Mosely. The victim testified that he saw Taylor look straight at him as Taylor drove the car in his direction. After Officer Mosely landed on the car's hood, Taylor continued to accelerate and swerve the car against the express orders of Officer Mosely, whose only protection from falling *1315 off the front of the car was his one-hand grip on the car's windshield wiper. Taylor then took a sharp right turn at approximately forty miles per hour, which threw Officer Mosely to the street pavement. Taylor then sped off.
This evidence was sufficient to infer from the circumstances that Taylor intended to kill Officer Mosely. The overt act of driving toward a person straddling a bicycle, carrying that person 253 feet on the car's hood in a zigzagging manner at a high rate of speed, then turning the car sharply and throwing the person from the car, when reviewed in a light most favorable to the prosecution, manifests an intent to kill. This assignment of error is without merit.

"OTHER CRIMES" EVIDENCE
In this assignment, the defendant complains the lower court erred in overruling defense counsel's objection to Officer Stelly's testimony that the defendant knocked him over before turning toward the victim. Defense counsel's objection and the present argument are based on the fact that Taylor was not being tried for hitting Officer Stelly. Defendant maintains that such testimony mandated a mistrial. Taylor's pro se argument maintains that the testimony constituted "other crimes" evidence proscribed by La.Code Crim.P. art. 770(2), which provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . . .
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
The mistrial articles do not apply where the reference involves an integral part of the act being testified about; in other words, the "res gestae" of the act. State v. Evins, 626 So.2d 480 (La.App. 3 Cir.1993); see also State v. Rexrode, 536 So.2d 671 (La.App. 3 Cir.1988). The evidence at issue clearly involves an integral part of the offense. The testimony shows the entire incident was brief; as soon as Officer Stelly identified himself as a policeman, Taylor set the car in motion, knocking Officer Stelly down. Immediately, the defendant turned the car toward Officer Mosely and accelerated. Chronologically, Taylor's actions form a brief but continuous event. Without the testimony at issue, it would have appeared that Officer Stelly identified himself as a policeman, then Taylor immediately sped toward Officer Mosely. This is untrue, and might have confused the jury.
Therefore, neither mistrial nor admonition was required, and this assignment is without merit.

JURY INSTRUCTIONS
The defendant next asserts that the district court erred by failing, in both the original instructions and the jury-requested reinstructions, to inform the jury that the sole intent element of attempted manslaughter is the specific intent to kill. Although the state acknowledges that specific intent to kill is required, it argues that the district court did not incorrectly instruct the jury on the standard of intent.
A completed homicide offense generally requires specific intent to kill or to inflict great bodily harm. The circumstances surrounding the homicide determine the actual offense or degree of offense. When, as in the present case, the defendant is charged with an attempted homicide, the intent to inflict great bodily harm is insufficient to constitute an element of the crime. The intent element of attempted homicides is the specific intent to kill. State v. Butler, 322 So.2d 189 (La.1975).
In the present case, the district court told the jury that specific intent to kill is a required element for attempted first degree murder and attempted second degree murder. However, the district court did not inform the jury that specific intent to kill is required for an attempted manslaughter conviction. In the original instructions, the district court defined attempted first and second degree murder, then stated:

*1316 The next responsive verdict is attempted manslaughter. Manslaughter is defined as a homicide which would be murder under either Article 30, first degree murder, or Article 30.1, second degree murder, but the offense is committed in sudden passion or heat of blood, immediately caused by a provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that the average person's blood would have cooled at the time the offense was committed, or a homicide committed without any intent to cause death or great bodily harm, when the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or Article 30.1, or of any intentional misdemeanor directly affecting the purpose [sic]. Again, an attemptthe charge is attempted, so an attempt would be an act tending toward either an act oreither does or omits an act for the purpose of intending directly toward the accomplishment of an object of attempted manslaughter would be an attempted manslaughter.
In the reinstructions, the district court first outlined the definition of attempt in the context of attempted first degree murder, then gave the statutory definition of manslaughter. The pertinent portions of the district court's reinstructions are:
Now, the charge is an attempt to commit a first degree murder. Attempt is defined as a person having a specific intent to commit a crime does or omits an act for the purpose of intending directly toward the accomplishing of his object, is guilty of an attempt to commit the offense intended, and it shall be immaterial whether under the circumstances he would have actually accomplished his purpose. Mere preparation to commit a crime shall not be sufficient to constitute an attempt,.... In order to be guilty of attempted first degree murder, you, the jury must be convinced beyond a reasonable doubt of one (1): That having a specific intent to commit the offense of first degree murder, he did or omitted an act for the purpose of intending directly toward the accomplishing of his object of committing the offense of attemptedof murder in the first degree.
. . . .
Manslaughter is defined as a homicide which would be murder under either Article 30, or Article 30.1, that is first or second degree murder, but the offense is committed in sudden passion or heat of blood, immediately caused by a provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled at the time the offense was committed, or a homicide committed without any intent to cause death or great bodily harm, but engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the purpose. Now, of course, an attempt would be an attempt to commit that offense as we have defined attempt.
In each instance, the district court did not clearly convey to the jury that attempted manslaughter requires a finding that the defendant possessed a specific intent to kill. Defense counsel, however, did not contemporaneously object to the erroneous and clearly confusing nature of these jury charges.
In cases where the district court has improperly included the "intent to inflict great bodily harm" language along with "specific intent to kill" language in jury instructions defining an attempted homicide, this circuit has held the error to be reversible. State v. Pyke, 93-1506 (La.App. 3 Cir. 5/4/94); 640 So.2d 460; Porter, 626 So.2d 476; State v. Holmes, 620 So.2d 436 (La.App. 3 Cir.), writ denied, 626 So.2d 1166 (La.1993). In Pyke, 640 So.2d 460, this court held that the defendant's failure to contemporaneously object to the erroneous definition instruction, as in this case, did not preclude him from raising it for the first time on appeal. On the merits, we analogized the deficient definitional instruction to a constitutionally deficient reasonable doubt instruction, which the United States *1317 Supreme Court in Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) held constituted a "structural error" not subject to harmless error analysis. This court therefore reversed Pyke's conviction and sentence, and remanded the case to the district court for a new trial.
Since Pyke, 640 So.2d 460, was rendered, the first circuit and the fifth circuit have also found similarly improper instructions to be erroneous, but, unlike this circuit, they have conducted a harmless error analysis. Where the underlying facts clearly show that the defendant had specific intent to kill the victim, these appellate courts have found that the verdict was surely unattributable to the erroneous instruction and therefore harmless. State v. Brunet, 95-340 (La.App. 1 Cir. 4/30/96); 674 So.2d 344; State v. Jynes, 94-745 (La.App. 5 Cir. 3/1/95); 652 So.2d 91.
In Jynes, the fifth circuit reviewed this court's decisions in Holmes, 620 So.2d 436, Porter, 626 So.2d 476, and Pyke, 640 So.2d 460. The Jynes court then factually distinguished its set of facts from those three cases, finding that the defendant Jynes pulled a gun and shot directly at the victim after specifically shooting the victim's uncle. The fifth circuit reasoned that, given those facts, it was not questionable whether the jury would have convicted the defendant had it been informed that it had to find a specific intent to kill. The court therefore found the instruction subject to harmless error review; applying Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182, it found that the guilty verdict actually rendered was "surely unattributable to the error." Jynes, 652 So.2d at 98.
In Brunet, 674 So.2d 344, the first circuit compared the disparate approaches taken in Pyke, 640 So.2d 460, holding the instructional error to be "structural" and not subject to harmless error review, and Jynes, 652 So.2d 91, holding the instructional error to be subject to harmless error analysis. The court specifically agreed with the result reached in Jynes. In a scholarly analysis of all facets of this issue, the first circuit reasoned as follows:
In Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302, Justice Rehnquist, writing for the court, determined that there are trial defects which are subject to the harmless error analysis, and structural defects which so affect the framework of the trial itself that they are not subject to harmless error analysis, and always result in a reversal of the conviction. In Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the court was faced with an erroneous instruction by the state trial court on reasonable doubt. The court held that a harmless error analysis can only be applied to a guilty verdict. Further, where there is an error on the burden of proof necessary to convict, there is no jury verdict within the meaning of the Sixth Amendment. Consequently, there is nothing to which harmless error can be applied. The court held in Sullivan that, unlike an instruction on an erroneous presumption regarding an element of the offense, a deficient reasonable doubt instruction vitiates all the jury's factual findings. Sullivan, 508 U.S. at 279, 113 S.Ct. at 2082. Although the court was referring to an erroneous instruction regarding a presumption applied to an element of the crime, rather than the element itself, the implication of the court's language is that an erroneous instruction regarding an element of the crime is distinguishable from an erroneous reasonable doubt instruction. The latter affects all the evidence presented and the weight it is given. The former affects only an element of the specific crime charged. In the instant case, the jury was presented with an additional method of determining guilt, along with the correct method. Accordingly, there is a jury verdict of guilty beyond a reasonable doubt. The only question is whether the verdict is based on the correct element, specific intent to kill, or on the incorrect element, specific intent to commit great bodily harm. If the jury verdict is surely unattributable to the instruction that attempted manslaughter can be based upon specific intent to commit great bodily harm, rather than specific intent to kill, there is harmless error. Consequently, unlike the situation involving reasonable doubt where there is no *1318 jury verdict, there is one here, and a harmless error review is appropriate.
Our review of the record convinces us that the verdict was surely unattributable to the error. Like the situation in Jynes, there was only one intended victim. Unlike the situation in State v. Butler, where the victim was cut numerous times on the face, eyes, arms and back, the victim here was stabbed in the kidney area so deep, that the wound penetrated up into the chest, maybe puncturing a lung. Additionally, after stabbing the victim the defendant left, assuring her he would return with help but never doing so, even though the circumstances indicated that the victim needed help to survive.
We have no doubt that the jury verdict was based on defendant's having a specific intent to kill. The erroneous instruction that a verdict of attempted manslaughter could be based on an intent to do great bodily harm was surely unattributable to the verdict.
Brunet, 674 So.2d at 347-48. (Footnote omitted. Second emphasis added.)
We agree with the approach taken by the first circuit in Brunet, especially its analysis of the holding of Sullivan, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182. However, we cannot say that the jury's verdict in this case was surely unattributable to the patently confusing and definitionally deficient instruction on the responsive verdict of attempted manslaughter. Likewise, under the facts of this case, the jury verdict could reasonably have been based on the incorrect element, specific intent to commit great bodily harm. Although a car is dangerous and can be considered a dangerous weapon in certain circumstances, it is questionable whether Taylor drove the car in a manner which, beyond a reasonable doubt, manifested a specific intent to kill Officer Mosely. The error in this case was therefore not harmless.
The defendant is entitled to a new trial in which the offense charged and the responsive verdicts thereto are properly defined. On remand, the state may not retry defendant on the charges of attempted first degree murder or attempted second degree murder. The fact that defendant was found guilty of a lesser degree of the offense charged constitutes an acquittal of all greater offenses charged, and the defendant cannot be retried on the greater offenses on a new trial. La. Code Crim.P. art. 598(A); State v. Boudreaux, 402 So.2d 629 (La.1981). Because this assignment of error is meritorious and defendant is granted a new trial, we pretermit discussion and analysis of defendant's remaining assignments of error, except for the following review of errors patent which defendant also requested.

ERRORS PATENT
Pursuant to La.Code Crim.P. art. 920(2), we have reviewed the record for errors patent on the face of the record. We have found one such error. The trial court failed to give defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of his sentence. La. Code Crim.P. art. 880. Normally, we would remand to the district court with instructions to correct its error. However, because our review of the record reveals that Taylor is entitled to a new trial because the jury was not properly instructed as to the definition of the crime for which he was convicted, this error patent is, for all practical purposes, thereby rendered moot.

DECREE
For these reasons, we reverse defendant's conviction and sentence. We remand this case to the district court for a new trial on attempted manslaughter in accordance with this opinion.
REVERSED AND REMANDED.
KNOLL, J., dissents for the following reasons.
In my view, the jury instructions adequately informed the jury of the element, specific intent to kill. Because this element was not reiterated with the responsive verdict of attempted manslaughter, if error, was harmless error.