620 So.2d 436 (1993)
STATE of Louisiana, Plaintiff-Appellee,
v.
John F. HOLMES, Defendant-Appellant.
No. CR92-1337.
Court of Appeal of Louisiana, Third Circuit.
June 9, 1993.
*437 Douglas L. Hebert, Jr., Kinder, for the State.
Russell T. Tritico, Lake Charles, for John F. Holmes.
Before DOMENGEAUX, C.J., and YELVERTON and THIBODEAUX, JJ.
YELVERTON, Judge.
John F. Holmes, the defendant, was tried on a charge of attempted second-degree murder of David Wolfe. He was convicted as charged by a unanimous jury of 12, and sentenced to 50 years at hard labor. We reverse.
Sufficiency of the evidence is one of the main assignments of error on Wolfe's appeal. Holmes' argument stresses the imprecise and disputed testimony of the witnesses, most of whom were participants in a feud shooting that left David Wolfe dead. The record establishes to our satisfaction, under the standard of review of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that the evidence was sufficient to convict Holmes of attempted second-degree murder under La.R.S. 14:27 and 14:30.1.
The shooting took place in Oakdale after dark. It involved Holmes and four of his brothers on one side, and Wolfe, his son Tavin, and a friend, Buford Daniels, on the other side. It was preceded by several encounters and events that began the day before. An argument over a knife took place the day before. Holmes filed charges against Wolfe and his son for aggravated assault. On the day of the shooting, Tavin was picked up on a warrant and spent a few hours in jail. When he got out he and his father and their friend Buford drove around Oakdale a while, drinking. They picked up some young ladies. Near Leo Webb's store, where they stopped to get liquor, a shooting encounter occurred. The back window of Wolfe's car was shattered. Tavin was hit in the eye. Wolfe drove Tavin to the hospital, dropped him and the ladies off, and returned, with the now inebriated Buford Daniels, to Leo Webb's store.
Holmes and his four brothers were all there, all armed. Wolfe drove by once. There was testimony that shots were fired by both groups. Wolfe made a U-turn. On his second drive-by, more shots were fired. Wolfe was hit in the face by gunshots. He died instantly and his car hit a telephone pole. The autopsy showed death was caused by a high velocity gunshot wound to the left side of his face. Holmes was the only one with a high velocity weapon, a rifle. He admitted firing it four times.
The problem with this conviction is not the sufficiency of the evidence. The problem is an erroneous jury charge. The charge was attempted second-degree murder. The trial judge instructed the jury that an essential element of this crime was a specific intent to kill or inflict great bodily harm. This was error, as a specific intent to inflict great bodily harm is not an element of the crime of attempted seconddegree murder. It was reversible error to so charge the jury. State v. Butler, 322 So.2d 189 (La.1975); State v. Guin, 444 So.2d 625 (La.App. 3rd Cir.1983); State v. Linear, 600 So.2d 113 (La.App. 2d Cir. 1992).
Although we find that by Jackson v. Virginia standards, the evidence was sufficient to support a finding of a specific intent to kill, the jury did not have to make such a finding in order to convict. As erroneously instructed, the jury could have convicted on finding a specific intent to inflict great bodily harm. In view of the numerous times throughout the trial that this was called to the jury's attention, the jury was given every opportunity to mistakenly apply the law.
From the beginning of the trial, the State emphasized to the jury that proof of a specific intent to inflict great bodily harm was enough to support an attempted second-degree murder charge. The State in its opening statement told the jury:
My burden is that the defendant, John Holmes, number one, tried and attemptedtried to kill a human being, Sonny *438 Boy Wolfe, when he has specific intent to kill him or when he had specific intent to inflict bodily harm. Remember this is or. That's my burden. That's the burden that they talked about yesterday. When I prove to you that he triedhe triedhe attempted to kill Sonny Boy Wolfe when he had specific intent to do so or to inflict great bodily harm, that's my burden.
In closing arguments the State repeated its definition of the charge by stating: "attempted second-degree murder is `... a try to kill Sonny Boy Wolfe or a try to inflict great bodily harm upon Sonny Boy Wolfe'".
The actual reversible error occurred, of course, when the trial judge instructed the jury as follows:
In order to define attempted second degree murder, we must first define second degree murder, Louisiana Revised Statute 14:30.1 of the Criminal Code of Louisiana defines second degree murder as follows: `When the offender has a specific intent to kill or inflict great bodily harm.' The following are the essential facts required to be proved beyond any reasonable doubt in order to justify a verdict of guilty of second degree murder; that the defendant, John Fitzgerald Holmes, killed Sonny Boy Wolfe a/k/a David Wolfe; that the defendant, John Fitzgerald Holmes, acted with the specific intent to kill or to inflict great bodily harm.
This instruction was given to the jury by the trial judge twice, first before the jury was retired to deliberate, and repeated a second time shortly after its deliberations began, when the jury sought clarification of the definitions of attempted second-degree murder and manslaughter.
No objection was made to the charge at trial as required by La.C.Cr.P. art. 841, nor was it formally assigned as error. Its first mention by appellant was in his brief on appeal. Having timely requested oral argument, the defendant also presented oral argument on the issue.
The question before us in this case is whether the circumstances warrant an exception to the contemporaneous objection rule of La.C.Cr.P. art. 841. The general rule is that, absent a contemporaneous objection, a defendant may not complain of an erroneous charge to the jury. The rule has an exception where the error is the very definition of the crime of which the defendant was in fact convicted, and where the record bears full and sufficient proof of the error which no posterior hearing could augment. State v. Williamson, 389 So.2d 1328 (La.1980).
In Williamson, supra, the defendant, a taxicab driver, was chasing and shooting at another car occupied by several people, including the victim. One of his shots hit the victim, who later died. The charge was attempted first degree murder, and the jury returned a verdict of attempted second degree murder. The jury instructions gave the wrong definitions of the charged and responsive crimes. Even at the time of trial, the trial judge, the prosecutor, and the defense counsel remained unaware that the definitions of the crimes had been changed 19 days before the shooting. The supreme court in that case, while recognizing that erroneous jury instructions are not errors patent on the face of the record and, absent an objection at trial, are not reviewable, went on to say:
Nonetheless it is within the province of this reviewing court to entertain complaint of Constitutional violations on appellate review notwithstanding that consideration of such complaint more often than not is deferred until filing of a writ of habeas corpus. This Court's usual pretermission of such issues stems from the need of an evidentiary hearing which can only be had incident to the writ of habeas corpus. The record before us, however, bears full and sufficient proof of the error which no posterior hearing could augment. For this reason, the need for delay is obviated.
In the case at hand the asserted error involves the very definition of the crime of which defendant was in fact convicted. Such an error is of such importance and significance as to violate fundamental requirements of due process.

*439 Furthermore to defer consideration until defendant were to file a writ of habeas corpus would only serve to prolong the occasion when defendant might again be tried, with resultant prejudice to the state's opportunity to reassemble its witnesses and evidence. For these reasons we find it preferable now to reverse defendant's conviction and sentence and order him retried.
Because reversal of defendant's conviction results not from evidentiary insufficiency but from trial court error, and upon defendant's urging in brief on this appeal, he is subject to being retried for attempted second degree murder, the crime of which convicted. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).
In State v. Belgard, 410 So.2d 720 (La. 1982), the defendant was convicted of attempted second-degree murder. The defendant shot the victim at point blank range four or five times. The definition of the crime as instructed to the jury included a specific intent to kill or to create great bodily harm. There was no contemporaneous objection to the erroneous charge. Without mentioning Williamson the court simply held that the erroneous charge to the jury was not reviewable on appeal. Concurring in the denial of an application for rehearing, Chief Justice (then Justice) Calogero observed that the case was distinguishable from Williamson. There were no recent legislative changes in the legal definition of the crime charged of which the trial judge and trial attorney were oblivious. Nor was it apparent from the record that the jury mistakenly applied the law, despite the fact that they may have been given an erroneous impression from the wording of the judge's charge.
In State v. Thomas, 427 So.2d 428 (La. 1982), the supreme court mentioned Williamson again. The court said that the case should not be construed as authorizing appellate review of every alleged constitutional violation and erroneous jury instruction urged first on appeal without timely objection at occurrence. "This court has not created or recognized a plain error rule of general application." Id. at 435.
This circuit faced this issue in State v. Latiolais, 453 So.2d 1266 (La.App. 3rd Cir.), writ denied, 458 So.2d 125 (La.1984). This circuit held in that case that, despite the inclusion of the erroneous requirement in the jury charge of a specific intent to create bodily harm, to which no objection was made, it did not appear that the jury mistakenly applied the law. This court concluded that there was sufficient evidence to find that Latiolais had a specific intent to kill the victim. The evidence was that Latiolais repeatedly stabbed the victim with a screwdriver in the chest, under the arm, in the neck, and in the left temple. The stab in the left temple blinded him for life. After pulling him from his truck, Latiolais tried to push the screwdriver into the back of the victim's head.
In the case of State v. Arvie, 505 So.2d 44 (La.1987), the supreme court once more cautioned that Williamson did not create or recognize a plain error rule of general application. However, it reaffirmed its decision in Williamson saying "one could hardly imagine an error which more seriously affects the fairness of a judicial proceeding or which is more prejudicial to the fundamental rights of an accused than a jury instruction which incorrectly defines the crime with which the accused is charged".
We find that the circumstances of the present case are much closer to those of Williamson than those of Belgard or Latiolais. In Williamson and in our present case the defendant was shooting at a moving car containing several people. In Belgard the defendant shot the victim with a pistol at point blank range four or five times, and in Latiolais the defendant stabbed the victim a number of times and tried to push a screwdriver into the back of his head. It was not apparent in the records in Belgard and Latiolais that the jury mistakenly applied the law. In the present case, however, it is questionable whether the jury would have convicted had it known it had to find a specific intent to kill. That we find the evidence was sufficient to convict does not convert Holmes' trial into a *440 fair one. As Justice Lemmon, concurring in Williamson, observed, "... an affirmation, essentially based on the pragmatic notion that the jury reached the right result on the wrong instructions, simply does not comport with basic concepts of due process."
This jury could have found that random shooting at a moving car evidenced a specific intent to inflict great bodily harm, but not a specific intent to kill. Moreover, in this case, the jury's attention was called to the wrong definition repeatedly. They were concerned about the definition; they came out of deliberation to ask the judge to clarify it.
We recognize in our case that, unlike Williamson, there were no recent legislative changes in the legal definition of the crime charged of which the trial judge and the attorneys on both sides were oblivious. That the trial judge, the prosecutor, and defense counsel were all three oblivious of the law in this case, however, appears certain. The error was repeated so many times that it could not be charged to mere oversight. It had to be a genuine misapprehension about what the law was. Nor does this appear to be a case where the defendant took a chance on an acquittal, holding the error in reserve in case of conviction. In the factual circumstances of this case, and the state of the law on this subject (this panel is divided), not even a novice lawyer, much less the experienced and reputable defense attorney in this case, would have taken a chance like that.
Two members of this panel have concluded that we should deal with the issue now. Our reasons are fundamental fairness, and judicial economy. If we do not deal with the issue now, we will most assuredly face it later on an application for post-conviction relief. The inevitable result when and however the issue is confronted is going to be a reversal. Considering the magnitude of the error, we conclude that it is within our province at this time to declare that Holmes was deprived of due process of law and he should be retried.
For the foregoing reasons, the conviction and sentence of the defendant are reversed and the case is remanded to the trial court for retrial.
REVERSED AND REMANDED.
DOMENGEAUX, C.J., dissents and assigns reasons.
DOMENGEAUX, Chief Judge, dissenting.
I disagree with the majority's decision to review the allegedly erroneous jury charge in this case. The matter is not properly before us, and in my opinion, the suggestion that a reversal is inevitable is not a foregone conclusion. I base this on the following jurisprudential reasons.
In State v. Latiolais, 453 So.2d 1266 (La.App. 3d Cir.1984), writ denied 458 So.2d 125 (La.1984), this court, per Judge Stoker, was faced with an erroneous jury instruction defining the crime of attempted second degree murder. Like in the instant case, the defendant did not object to the instruction at trial, but did argue on appeal that the court's instruction was erroneous. Additionally, the defendant raised the issue of ineffective assistance of counsel based on his attorney's failure to object to the jury instruction.
In finding no merit to either assignment of error, Judge Stoker gave a scholarly discussion of the issue and distinguished the cases of State v. Butler, 322 So.2d 189 (La.1975) and State v. Williamson, 389 So.2d 1328 (La.1980) which are relied upon by the majority herein. Judge Stoker applied the contemporaneous objection rule and explained that the "rule is designed for just such a case as this. Defendant cannot neglect to afford the trial judge an opportunity to correct the charge, take his chance on a jury acquittal, then complain after conviction of the error." 453 So.2d at 1271, citing State v. Belgard, 410 So.2d 720 (La.1982).
I agree with the Latiolais rationale and its reliance on the Supreme Court case of State v. Belgard. In Belgard, the defendant assigned as error the trial court's jury instruction on the definition of attempted second degree murder. However, because the defendant did not object to the instruction *441 at trial, the Supreme Court declared the issue not reviewable on appeal. Justice Calogero, in his concurrence to the denial of defendant's application for rehearing, explained the distinction between the Williamson case and Belgard's situation. That discussion is pertinent herein, as it explains that the basis for the Williamson holding was a recent change in the law.
For further explanation, see State v. Thomas, 427 So.2d 428 (La.1982), which specifically limited the Williamson holding to its facts and stated, "Williamson should not be construed as authorizing appellate review of every alleged constitutional violation and erroneous jury instruction urged first on appeal without timely objection at occurrence." 427 So.2d at 435. The concurring and dissenting opinions of Thomas also contain relevant insight on this issue, as does a Louisiana Law Review excerpt found at 44 LLR 487. Similarly, in State v. Salone, 605 So.2d 229 (La.App. 2d Cir. 1992), the Second Circuit held that "absent a contemporaneous objection, a defendant may not, on appeal, complain of the charge to the jury," which improperly defined the crime of attempted manslaughter.
The Belgard and Latiolais cases are controlling as they are factually and procedurally comparable to the instant case. Conversely, the cases cited by the majority are distinguishable. Butler, supra, and State v. Guin, 444 So.2d 625 (La.App. 3d Cir. 1983) both involved a jury instruction which the trial judge was given an opportunity to correct. State v. Linear, 600 So.2d 113 (La.App. 2d Cir.1992) addressed a Boykin exam, not a jury instruction. State v. Arvie, 505 So.2d 44 (La.1987) failed to address the pertinent Belgard case and contains only dicta, which in my view cannot be said to have expanded the Williamson holding beyond its unusual facts.
This case involves no objection at trial, no recent change in the law which would excuse defendant's failure to object at trial (as per Williamson), and reveals facts which I believe overwhelmingly support defendant's conviction, showing that the jury did not misapply the correct law as a result of the instruction given. I would affirm this conviction.
Accordingly, I respectfully dissent.