STATE OF LOUISIANA,
v.
JEFFERY JOSEPH LOUP.
No. 2009 KA 1047.
Court of Appeals of Louisiana, First Circuit.
March 30, 2010.
Not Designated for Publication
HILLAR C. MOORE, III, District Attorney, JACLYN C. CHAPMAN, Assistant District Attorney, Baton Rouge, LA, Attorneys for State of Louisiana.
M. MICHELE FOURNET, Baton Rouge, LA, Attorney for Defendant-Appellant Jeffery Joseph Loup.
Before: PARRO, KUHN, and McDONALD, JJ.
PARRO, J.
The defendant, Jeffery Joseph Loup, was charged by bill of information with attempted second degree murder, a violation of LSA-R.S. 14:27 and 14:30.1.[1] He pled not guilty and waived his right to a jury trial. Following a bench trial, the trial court found the defendant guilty of the responsive offense of attempted manslaughter, a violation of LSA-R.S. 14:27 and 14:31. The defendant filed motions for post-verdict judgment of acquittal and new trial, which were denied. The defendant was sentenced to 18 months of imprisonment at hard labor. The defendant then filed a motion to reconsider sentence, which was granted. The defendant was resentenced to thirty days of imprisonment in the parish prison. The defendant now appeals, designating three assignments of error. We affirm the conviction and sentence.

FACTS
The defendant and his wife, Kristen Roth, had been having marital problems for some time. Kristen testified at trial that the defendant was physically abusive, and it was decided that she and the defendant should separate. The first day of their trial separation was on January 16, 2007. On that day, the defendant stayed at a friend's house. That night, Kristen called the defendant and told him he needed to come pick up his medication and that she would leave it outside the door for him. When the defendant arrived, Kristen opened the door, and she and the defendant spoke briefly. The defendant then left. Kristen felt the defendant had acted strangely during their conversation. Frightened, Kristen called her friend, Alan McGlynn, who lived close by and with whom she had developed a relationship, to come stay with her. According to the trial testimony of both Kristen and Alan, their relationship was not sexual at that point.
Alan went to Kristen's house and, sometime after 11:00 p.m. that night, Alan saw a small light, which he mistook for fireflies moving around in the carport. Kristen got up to investigate. As she approached the door to the carport, the defendant opened that door and yelled, "Are y'all ready to die?" The defendant had a camera in one hand and a loaded semi-automatic handgun in the other hand. The gun had a magazine with five live rounds and a live round in the chamber. Kristen grabbed for the defendant's hand that held the gun. Alan also tried to grab the gun, and all three of them went to the ground. Kristen was able to remove herself from the fracas and called 911. As the defendant and Alan wrestled over the gun, Kristen retrieved her own gun and told the defendant to leave. Alan told her to put the gun away, which she did. While they continued to struggle on the floor, Alan kept his hands on the gun. Alan managed to get his fingers on either side of the trigger to prevent the defendant from pulling the trigger. After about fifteen minutes of struggling, the police arrived and restored order. Alan sustained cuts to his fingers and the back of his head, which the defendant had bitten. Alan was unarmed. The gun was never discharged. The defendant did not testify at trial.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant argues that the evidence was insufficient to support the conviction for attempted manslaughter. Specifically, the defendant contends the state failed to prove he had the specific intent to kill.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta, since those issues are moot. State v. Hearold, 603 So.2d 731, 734 (La. 1992).
A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const, amend. XIV; LSA-Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319, 99 S.Ct. at 2789. See also LSA-C.Cr.P. art. 821(B); State v. Ordodi, 06-0207 (La. 11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that, in order to convict, the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 01-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144.
The defendant was charged with attempted second degree murder. The trial court adjudged the defendant to be guilty of the responsive offense of attempted manslaughter. See LSA-C.Cr.P. art. 814(A)(4). Manslaughter is a homicide which would be first degree murder or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. LSA-R.S. 14:31(A)(1). Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object, is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. LSA-R.S. 14:27(A). Further, mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended. LSA-R.S. 14:27(B)(1).
In order for an accused to be guilty of attempted murder, a specific intent to kill must be proven beyond a reasonable doubt. Although a specific intent to inflict great bodily harm may support a conviction of murder, the specific intent to inflict great bodily harm will not support a conviction of attempted murder. State in Interest of Hickerson, 411 So.2d 585, 587 (La. App. 1st Cir.), writ denied, 413 So.2d 508 (La. 1982). See State v. Butler, 322 So.2d 189 (La. 1975); see also State v. Fauchetta, 98-1303 (La. App. 5th Cir. 6/1/99), 738 So.2d 104, 108, writ denied, 99-1983 (La. 1/7/00), 752 So.2d 176. Attempted manslaughter also requires the presence of specific intent to kill. State v. Brunet, 95-0340 (La. App. 1st Cir. 4/30/96), 674 So.2d 344, 347, writ denied, 96-1406 (La. 11/1/96), 681 So.2d 1258.
The testimony and evidence presented at trial, when viewed pursuant to the Jackson standard in the light most favorable to the prosecution, was sufficient to support the conviction of attempted manslaughter. Officer Kevin Istre, with the Baton Rouge City Police Department, testified at trial that when he arrived at Kristen's home, he observed Alan and the defendant on the floor, both struggling over the gun. Officer Istre testified that Alan was bleeding onto the gun and that both men appeared to be "near exhaustion." After separating the two men, Officer Istre Mirandized the defendant and asked him what had happened. Officer Istre testified the defendant told him the following information. It was the first night of a trial separation with his wife. After picking up items from his house that night, the defendant left in his vehicle. However, he drove only around the block and parked, because he suspected Kristen was cheating on him. The defendant then returned to his house and hid in the garage. When the defendant observed Alan go inside the residence, the defendant returned to his car and retrieved a camera and a gun. When the defendant observed Alan and Kristen become intimate, he attempted to take pictures. As Alan approached the defendant, the defendant took out the gun to protect himself, at which time a struggle ensued.
It is clear in its finding of guilt that the trial court discounted the testimony suggesting that the defendant pulled out his gun only after Alan began moving toward him. Obviously, the trial court found the testimony of Alan and Kristen to be more credible and found such testimony established that the defendant threw open the door and, with a gun in his hand, yelled, "Are y'all ready to die?" Kristen immediately grabbed the defendant's hand with the gun. Within moments, Alan grabbed the defendant. According to Alan's testimony, he and the defendant struggled over the gun for about fifteen to twenty minutes. The defendant weighed 230 pounds, and Alan weighed 170 pounds. As Alan held onto the gun, the defendant was on Alan's back. Alan was face down on a slippery floor with no traction. During the struggle, the defendant continually attacked Alan. According to Alan, the defendant "was on top of me, kneeing me in the head, in the back, hitting me, elbowing me, biting me, kicking, scratching, whatever he could." Alan managed to hold onto the gun during the melee. Alan placed his finger between the back of the trigger and the trigger guard to prevent the trigger from being pulled. After the men were separated, Alan's finger that was behind the trigger was bloody and somewhat jammed in the trigger guard. According to Alan, the officer nudged it off of his hand with his boot. However, Officer Istre testified that the gun came off of his finger without assistance from him.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. State v. Taylor, 97-2261 (La. App. 1st Cir. 9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La. App. 1st Cir. 1985).
The evidence was sufficient to infer from the circumstances that the defendant intended to kill Alan. The defendant hid in the garage to spy on Kristen. Alan's arrival clearly angered the defendant to the point where he went back to his car and retrieved a loaded gun. The defendant returned to the house with the gun, threatened to kill, engaged in a struggle with Alan, then repeatedly beat Alan to regain control of the gun. It would seem the only reason the defendant did not fire the gun was because Alan prevented it. When reviewed in a light most favorable to the prosecution, these acts manifest a specific intent to kill. Any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of attempted manslaughter.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, the defendant argues the trial court erred in considering a non-element of attempted manslaughter. Specifically, the defendant contends the trial court, in its determination of whether he was guilty or not, incorrectly considered the element of intent to commit great bodily harm.
The defendant was charged with attempted second degree murder and convicted of the responsive offense of attempted manslaughter. As noted in the discussion of assignment of error number one, in order for an accused to be guilty of attempted second degree murder or attempted manslaughter, a specific intent to kill must be proven beyond a reasonable doubt.[2]
There was a bench trial in the instant matter. The trial court did not read aloud the charges. It does not appear from the record that a charge conference was held. The trial court may have used charges submitted by both counsel or used its own boilerplate jury charge language. See LSA-C.Cr.P. art. 781. Before rendering its decision, the trial court simply stated: "The court will note for the record that it has reviewed the law, as well as the jury charges applicable to this case. The court has self-imposed the jury instructions upon the court, as the court has reviewed those instructions in reaching its verdict."
The trial court then rendered its judgment:
The court having had the opportunity to read the facts submitted into evidence finds beyond a reasonable doubt that the defendant is in fact guilty of attempted manslaughter. There is sufficient evidence to support a finding of an attempt of the crime of manslaughter attempted in sudden  sudden passion, the heat of blood, immediately caused by provocation sufficient to deprive an average person of self-control and cool reflection. The court finding all elements of that offense having been satisfied pursuant to the burden, that of being beyond a reasonable doubt.
Following the conviction in the instant matter, a hearing was held on September 24, 2008, on the defendant's motions for post-verdict judgment of acquittal and new trial. At the hearing, defense counsel noted that the argument for both motions was essentially the same. Defense counsel argued the evidence did not prove attempted manslaughter, because the defendant never fired his gun. Defense counsel further argued the state did not prove the defendant "had the intent to kill anybody, that he had the intent to hurt anybody, harm anybody with a deadly weapon." The trial court took the defendant's motions under advisement.
At the hearing about a month later on October 23, 2008, the trial court denied the defendant's motions for post-verdict judgment of acquittal and new trial. The trial court then provided its reasons for the denial of the motions. The trial court stated, in pertinent part:
In the defendant's motion for post-verdict judgment of acquittal the central issue to [sic] which this court finds controlling is whether this court was justified in finding the defendant [had] the necessary requisite of specific intent to kill or inflict great bodily harm as such is a necessary element in the crime of attempted manslaughter.
* * * * *
The court sat in judgment of this case as the trier of fact. I listened to the evidence, I observed the witnesses very closely during the course of that trial and I affirmed by verdict by finding that the evidence proved beyond a reasonable doubt that the defendant had a specific intent to kill or to inflict great bodily harm when he entered the room with a loaded handgun and uttered the words, "Are you ready to die", [sic] to the victims. If the victims had not taken the defensive action they took, then possibly there would have been an actual firing of the weapon that would have either resulted in a death or a wounding of one or both of the victims.
* * * * *
Based on what was presented and being that the court may find specific intent by inference from the defendant's actions and circumstances, I find that the defendant acted with the specific intent to kill or inflict great bodily harm while in a state of sudden passion or heat of blood immediately caused by provocation that deprived him of his self[-]control and cool reflection.
By referring to the element of intent to "inflict great bodily harm" along with the element of intent to kill, it appears that the trial court misspoke about the proper elements of attempted manslaughter when ruling on the motion for new trial and postverdict judgment of acquittal. However, the error at issue is not structural, but rather a trial error which may or may not have prejudiced the defendant and thus is subject to harmless error analysis. See State v. Hongo, 96-2060 (La. 12/2/97), 706 So.2d 419, 422. In a jury trial, an invalid instruction on the elements of an offense is harmless, if the evidence is otherwise sufficient to support the jury's verdict, and the jury would have reached the same result if it had never heard the erroneous instruction. The determination is based upon "whether the guilty verdict actually rendered in this trial was surely unattributable to the error." Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). See Hongo, 706 So.2d at 421.
At the October 23, 2008 hearing, the trial court, in its reasons for its ruling, noted several times that the defendant had the specific intent to kill or to inflict great bodily harm in committing the crime of attempted manslaughter. The defendant's trial was held February 25, 2008. The October 23, 2008 hearing was almost eight months later. It appears the trial court, having been so far removed from when the trial took place, was merely reciting the text of the second degree murder statute. Moreover, when the trial court rendered its judgment of guilty, there is nothing in the transcript of the trial to suggest the trial court applied the improper "inflict great bodily harm" element in determining the defendant's guilt at the time of the defendant's trial. The trial court noted at the October 23 hearing that it had "reviewed exhaustively the law and the evidence and the arguments of counsel." A judge in a bench trial is not required to give reasons in support of his verdict, nor is he required even to charge himself on the applicable law, since he is presumed to know it. State v. Pizzalato, 93-1415 (La. App. 1st Cir. 10/7/94), 644 So.2d 712, 714, writ denied, 94-2755 (La. 3/10/95), 650 So.2d 1174.
Furthermore, there was no argument or evidence presented to support a finding that the defendant had the intent only to inflict great bodily harm. See Hongo, 706 So.2d at 422. The evidence at trial established that the defendant, very upset that his wife was seeing another man, burst into his house with a loaded gun and asked Alan and Kristen if they were ready to die. Following the ensuing struggle over the gun between the defendant and Alan, it seems clear the defendant would have shot Alan but for Alan having lodged his fingers in the trigger guard, preventing the defendant from firing his gun. Deliberately pointing and firing a deadly weapon at close range are circumstances that support a finding of specific intent to kill. State v. Broaden, 99-2124 (La. 2/21/01), 780 So.2d 349, 362, cert. denied, 534 U.S. 884, 122 S.Ct. 192, 151 L.Ed.2d 135 (2001). As we concluded in our discussion of assignment of error number one, the state presented sufficient evidence to show the defendant came to the house with the intent to kill the victims, but failed to complete his plans.
Based on this evidence, no reasonable jury or trier of fact could have concluded that the defendant merely intended to inflict great bodily harm on Alan. Accordingly, we conclude the judgment of guilty of attempted manslaughter rendered in this trial was surely not attributable to the erroneous reference made eight months later. See Hongo, 706 So.2d at 421-22. Therefore, because the improper reference was not a structural error mandating reversal and because we conclude there was harmless error, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
In his third assignment of error, the defendant argues the trial court erred in accepting his purported jury waiver. Specifically, the defendant contends that, while the record purports to reflect a waiver, the trial court did not have sufficient information for a knowing and intelligent waiver.
The defendant's argument is meritless. Both the United States Constitution and the Louisiana Constitution expressly guarantee a criminal defendant the right to a jury trial. U.S. Const. amend. VI; LSA-Const. art. I, § 17. However, some criminal defendants may, pursuant to statute, waive this constitutionally guaranteed right, provided the waiver of the right is knowingly and intelligently made. LSA-C.Cr.P. art. 780(A). A valid waiver of the right to a jury trial must be established by a contemporaneous record setting forth an apprisal of that right followed by a knowing and intelligent waiver by the accused. Waiver of this right is never presumed. However, prior to accepting a jury trial waiver, the trial court is not obligated to conduct a personal colloquy inquiring into the defendant's educational background, literacy, and work history. State v. Hebert, 08-0003 (La. App. 1st Cir. 5/2/08), 991 So.2d 40, 47, writs denied 08-1526 (La. 4/13/09), 5 So.3d 157, and 08-1687 (La. 4/13/09), 5 So.3d 161.
Several months after being arraigned,[3] the following exchange between the court, defense counsel, and the defendant took place:
Mr. Messina [defense counsel]: Your Honor, before we actually get into this, we thought today was going to be a possible plea today, but it appears that that's not going to happen. This is to put the court on notice that of  now that Mr. Loup has agreed or would like to waive his constitutional right to a jury trial and be tried by judge on this matter.
The Court: All right, sir. Raise your right hand and be sworn. [The defendant was sworn].
Q. All right. Your name, sir?
A. Jeffery Joseph Loup.
Q. All right, Mr. Loup. Mr. Messina has advised you of your rights and your constitutional rights to have your case tried by a jury?
A. Yes, sir.
Q. All right. Do you understand that right?
A. Yes.
Q. And you wish to waive that right and have your case tried by the court?
A. Yes, your Honor.
Q. All right. . . . Court finds that the defendant's waiver of a jury trial is a knowing and intentional and free and voluntary act.
On the day of trial, prior to the first witness being called, the trial court again went over the defendant's waiver of his right to a jury trial:
The Court: Mr. Loup, you are charged by felony bill of information with one count of attempted second degree murder. It is my understanding that you have previously acknowledged your desires to waive your right to a trial by jury prior to proceeding forward to your waived jury trial. The court wants to ensure that you understand your rights to a trial by jury as well as your current desires to go forward with a bench trial in this case. Second degree murder is  I'm sure you have gone over the elements of that crime with your lawyer. And the possible penalty as an attempt is  is a quite severe offense. And before I proceed with the granting of your request for a bench trial, the court wants to make certain that is exactly what you choose to do at this time: That you do not wish to have this case tried by a jury of twelve members.
Mr. Loup: Yes, your Honor.
The Court: That's what you wish to do?
Mr. Loup: To proceed in the way that we set forth.
The record indicates that the trial court twice advised the defendant of his right to have or waive a trial by jury. The record further indicates that defense counsel advised the defendant of his right to have his case tried by a jury, that the defendant understood this right, and that he wished to waive the right. The right to a jury trial was validly waived in this matter. See Hebert, 991 So.2d at 47.
This assignment of error is without merit.

SENTENCING ERROR
Under LSA-C.Cr.P. art. 920(2), which limits our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence, we have discovered a sentencing error. Following a hearing on a motion to reconsider sentence, the defendant was resentenced to 30 days of imprisonment in the parish prison. Since a conviction for attempted manslaughter requires the defendant to be sentenced at hard labor, the defendant's sentence in parish prison is illegally lenient. See LSA-R.S. 14:31(B) and 14:27(D)(3). However, since the parish prison sentence is not inherently prejudicial to the defendant, and this issue has not been raised by either party, we decline to exercise our discretion to correct the error. See State v. Price, 05-2514 (La. App. 1st Cir. 12/28/06), 952 So.2d 112 (en banc), writ denied, 07-0130 (La. 2/22/08), 976 So.2d 1277.
CONVICTION AND SENTENCE AFFIRMED.
McDONALD, J. agrees in part and dissents in part:
I believe the majority is correct in denying the first and third assignments of error. Any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of attempted manslaughter. Additionally, the majority is correct that the defendant validly waived his right to a jury trial.
However, I respectfully disagree with the finding on defendant's second assignment and find it was not harmless error. In finding the defendant guilty the trial court did not state for the record the specific law it relied on or what charges he considered in his deliberations. Therefore, the defense could not make a contemporaneous objection to whatever was considered by the judge. At the hearing on the motion for postverdict judgment of acquittal and new trial the court noted three times that he had found and the evidence had proven that the defendant had a "specific intent to kill or to inflict great bodily harm." It is clear to me that the trial court determined the defendant's guilt based on an erroneous understanding of the law. In examining the record it seems that the trial court, the prosecutor, and the defense counsel were all unclear on the law regarding the issue of the elements of attempted manslaughter. The error was so often repeated that it does not seem to have been a mere oversight. State v. Holmes, 620 So.2d 436 at 440 (La. App.3rd Cir.), writ denied, 626 So.2d 1166 (La. 1993).
I do not believe the use of the wrong elements is harmless error as found by the majority. I cannot say that the finding of guilt was unattributable to the trial court error. The court's understanding of the law was that a finding of either specific intent to kill or to inflict great bodily harm would satisfy the definition of attempted manslaughter. The defendant never fired his gun. While he may have intended to kill someone, the evidence could also suggest the defendant may have intended to scare Alan and Kristen, or to inflict a beating on Alan, possibly with the gun. It is not unreasonable that the trial court could have concluded the defendant did not have specific intent to kill, but did have intent to inflict great bodily harm. Because it is questionable that the trial court would have found the defendant guilty of attempted manslaughter, much less attempted second murder, had it known that it had to find a specific intent to kill, I cannot say that the erroneous instruction was harmless error. See Hickerson, 411 So.2d at 586-587.
Therefore, I would reverse the conviction, vacate the sentence, and remand the case to the trial court for a new trial on the charge of attempted manslaughter.
NOTES
[1] The defendant was also charged with battery. The battery charge was severed and ultimately non-prossed.
[2] After the state rested, defense counsel moved for a directed verdict. Defense counsel argued the state did not establish the defendant committed attempted second degree murder because it failed to prove he had the specific intent to kill or inflict great bodily harm. The prosecutor responded that the state did meet its burden. The trial court denied the motion.
[3] The defendant was arraigned May 3, 2007. The waiver of jury trial colloquy was held October 4, 2007.