TERRI F. LOVE, Judge.
|,John Jason Wallace (“Mr. Wallace”) appeals his conviction for the aggravated rape of B.B.[1] between 1996 and 1998, in violation of La. R.S. 14:42(A)(4). Mr. Wallace alleges that due to the insufficiency of evidence, improper jury charges, ineffective assistance of counsel, and the erroneous admission of evidence his conviction must be vacated or in the alternative the conviction must be reversed and the case remanded for a new trial. Notably, in its response to Mr. Wallace’s jury charge claim, the State concedes the error was not harmless and the matter should be reversed and remanded. We find that there was sufficient evidence for the jury to convict Mr. Wallace of aggravated rape; however, we find the trial court committed reversible error by charging the jury relative to the offense of aggravated rape as it was defined in 2012, at the time of trial, rather than as the offense was defined in 1996-1998, at the time of the violation. Accordingly, we reverse Mr. Wallace’s conviction for aggravated rape and remand the case for a new trial.

\ .PROCEDURAL HISTORY

In November 2010, the State charged Mr. Wallace with violation of La. R.S. 14:42(A)(4) for the aggravated rape of B.B. between 1996 and 1998. Following a two-day jury trial in October 2012, a unanimous jury found Mr. Wallace guilty as charged. Prior to sentencing, Mr. Wallace filed motions for new trial, in arrest of judgment and for post-verdict judgment of acquittal, all of which the trial court denied. Thereafter, Mr. Wallace was sentenced to life imprisonment, without benefit of parole, probation, or suspension of sentence. This timely appeal followed wherein Mr. Wallace assigns as errors the sufficiency of the evidence, improper jury instructions, ineffective assistance of counsel, and erroneous admission of evidence.

FACTUAL BACKGROUND

The aggravated rape of B.B., born December 5, 1988, took place between 1996 and 1998 when she was a minor. The victim lived with her mother, M.M., and older sister K.B. In 1997, the victim’s mother began dating Mr. Wallace, who lived with them until 2000, when M.M. “kicked him out” of the house because “too many creepy things w[ere] happening.” M.M. testified that Mr. Wallace would often stay home and watch the girls while *1277 she was at work; however, her maternal instincts told her that her daughters were not safe in the house with him anymore.
1SB.B. testified that when she was between the ages of eight and ten years old and while Mr. Wallace was living with them, Mr. Wallace sexually abused her. At trial, B.B. stated that when she was around eight or nine she would sometimes sleep in the bed with her mother and Mr. Wallace. She recalled one occasion when she was sleeping between her mother and Mr. Wallace, and woke to find that Mr. Wallace placed her hand on his penis. In a recorded interview with police, B.B. explained that Mr. Wallace was rubbing his penis with her hand. She recounted several instances when she was nine years old when Mr. Wallace would enter her room and watch her sleep. During that time frame, Mr. Wallace’s advances progressed. He would regularly perform oral sex upon her, sometimes in her bed and other times on the sofa. The victim testified that there was one instance when Mr. Wallace kept her home from school and tried to have sexual intercourse with her. During her recorded interview, she explained how Mr. Wallace placed the victim on her hands and knees and positioned himself behind her and attempted to penetrate her vagina with his penis. She testified at trial that although he was unable to fully penetrate her, there was genital to genital contact.
B.B. testified that Mr. Wallace’s sexual advances occurred generally at night when her mother was at work. The only other person in the house during that time was her older sister; however, she never witnessed any of the sexual encounters. B.B. did not tell anyone at the time about Mr. Wallace’s actions because she was afraid of him. She described him as an “alcoholic” and being “physically abusive.” 14The victim testified that she feared telling anyone because he threatened to harm her family if she told anyone about his behavior.
Meanwhile, the victim’s mother noticed that any time Mr. Wallace and she would go somewhere, Mr. Wallace wanted to bring B.B. but never her other daughter. The victim’s mother testified that “it just seemed like he was trying to be more than a father figure to her,” and “it didn’t seem right anymore.” After the victim’s mother split with Mr. Wallace and “kicked him out” of her house in 2000, Mr. Wallace tried to see B.B. again. He knocked on the victim’s bedroom window one night while her mother was at work. B.B. stated she crawled out of her bed and into her sister’s room, where they called 911, who told the girls to hide in the closet and until the police arrived. In a separate incident, a drunken Mr. Wallace appeared at the victim’s house during the day asking to see B.B., but her sister would not allow him inside.
At trial, the parents of one of the victim’s friends testified that they knew Mr. Wallace from living in the neighborhood in the late 1990s to 2000. They both testified that Mr. Wallace would call their residence demanding to know the victim’s whereabouts. The husband testified that during one telephone conversation, Mr. Wallace admitted having sex with the victim. The wife added that Mr. Wallace would threaten her and her family if she did not tell him of the victim’s whereabouts. Mr. Wallace’s persistent telephone calls led to his arrest at their residence.
| fiWhen B.B. was in middle school, her mother began noticing behavioral problems. The victim began “acting up” and ran away from home. At one point, the school B.B. was attending called her moth *1278 er and informed her that B.B. had bags packed in her locker. Around this time, B.B. told her school counselor about Mr. Wallace and the sexual abuse she experienced when she was younger. The school counselor then informed the victim’s mother. Thereafter, in 2003, the police were called to B.B.’s father’s house, and she gave the police a statement.
Subsequently, the victim’s mother enrolled B.B. into a boarding school in Mississippi where she received counseling daily. During that time period, B.B. had no contact with Mr. Wallace. She then left the boarding school when she was seventeen and moved to Mississippi to live on her own.
In 2008, Mr. Wallace contacted B.B. via MySpace, but she did not respond. At trial, B.B. identified the messages she received from Mr. Wallace beginning in January of 2008 and noted for the jury that the messages contained a picture of Mr. Wallace. The messages stated that Mr. Wallace was sorry for what he did and that he wanted to have sex with her. The MySpace messages stopped for a brief period of time after the father of B.B.’s child contacted Mr. Wallace. When B.B. was pregnant with her second child, she began receiving MySpace messages from Mr. Wallace again. Scared that Mr. Wallace would try to physically contact her, she notified Sergeant Michelle Rogers Canepa (“Sergeant Canepa”).
Sergeant Canepa testified at trial that she was assigned to the Juvenile Criminal Investigations Bureau of the St. Bernard Parish Sheriffs Office in 2009. |fiIn December 2009, the victim gave Sergeant Canepa a video-recorded statement in which she reported instances of sexual abuse by Mr. Wallace that began when she was eight years old and until she was ten years old. Additionally, Sergeant Canepa located the 2003 complaint made by the victim and testified that it was substantially the same as the 2009 complaint. The officer testified that during her interview with the victim, B.B. showed Sergeant Canepa the MySpace messages she received from Mr. Wallace. Sergeant Cane-pa then made copies of the messages to include in her report. Sergeant Canepa explained to the jury that the messages indicated Mr. Wallace loved the victim, wanted to be with her, wanted to have sex with her, and expressed remorse for what he did. The messages also demonstrated Mr. Wallace’s rage over the victim’s refusal to contact him and blocking him from her MySpace page.
Although her last contact with Mr. Wallace was when she was ten years old, the victim testified that when the threatening and harassing MySpace messages began in 2008, she contacted the police.

STANDARD OF REVIEW

On appellate review, Mr. Wallace assigns as errors the sufficiency of the evidence, improper jury instructions, ineffective assistance of counsel, and erroneous admission of evidence. The Louisiana Supreme Court has previously held that “[wjhen the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence.” State v. Hearold, 603 So.2d 731, 734 (La.1992). Additionally, the court in Hearold, noted:
... when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider *1279 the assignments of trial error to determine whether the accused is entitled to a new trial. If the reviewing court determines there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused must receive a new trial, but is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient.
Id. (citing Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988)). Accordingly, this opinion addresses the sufficiency of the evidence at the outset.

SUFFICIENCY OF THE EVIDENCE

The standard of review of convictions for sufficiency of the evidence is discussed in State v. Chisolm, 99-1055, p. 4-5 (La.App. 4 Cir. 9/27/00), 771 So.2d 205, 209-10:
The standard of appellate review for sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole, not just the evidence favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict will be upheld. State v. Mussall, 523 So.2d 1305, 1310 (La.1988).
Either direct or circumstantial evidence may prove the essential elements of the crime. With circumstantial evidence the rule is: “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” LSA-R.S. 15:438. This rule is not a separate test from the review standard established by Jackson v. Virginia, but rather it is an evidentiary guideline which facilitates appellate review of the sufficiency of the evidence. State v. Jacobs, 504 So.2d 817, 820 (La.1987). Ultimately, to support a conviction, the evidence, whether | direct or circumstantial or both, must be sufficient under Jackson to satisfy any rational trier of fact that the defendant is guilty beyond a reasonable doubt. State v. Sutton, 436 So.2d 471 (La.1983). Credibility determinations are within the discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984).
Additionally, we note that “[t]he testimony of the victim alone is sufficient to establish the elements of the offense of aggravated rape, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant.” State v. Lewis, 97-2854, p. 33 (La.App. 4 Cir. 5/19/99), 736 So.2d 1004,1023.
Mr. Wallace was charged with the aggravated rape of B.B. between 1996 and 1998. Aggravated rape, a violation of La. R.S. 14:42 and as the statute read at the time of the offense, is committed when the defendant has anal or vaginal sexual intercourse with the victim when the victim is under the age of twelve.
At trial, the victim testified that she was born on December 5, 1988. She stated that Mr. Wallace sexually abused her from the time she was eight years old until she was ten years old. She explained to the jury, as she did during her videotaped *1280 police interview, that the first incident of abuse was when she was eight years old while she was sleeping between her mother and Mr. Wallace. She testified that she woke up to find her hand placed on Mr. Wallace’s penis, and he was using her hand to stroke himself. She later recounted that when she was nine years old Mr. Wallace would enter her bedroom to watch her sleep. B.B. testified that Mr. Wallace’s sexual advances progressed wherein she woke up and found Mr. Wallace performing oral sex upon her. In her videotaped interview, she explained that the sexual encounters occurred on a daily basis. B.B. also testified that one time Mr. Wallace kept her home from school and tried to have sexual ^intercourse with her. She explained how Mr. Wallace took her clothes off, placed her on her hands and knees, positioned himself behind her and attempted to penetrate her vagina with his penis. She testified at trial that although he was unable to fully penetrate her, there was genital to genital contact.
In addition to the victim’s testimony, B.B.’s mother testified that when B.B. was in middle school when she first learned about the sexual abuse. As a result, the victim’s mother placed her daughter in a Mississippi boarding school where she received counseling daily. Sergeant Canepa testified at trial as to what she learned during the investigation interview. The video-recorded statement played for the jury corroborated Sergeant Canepa’s testimony. Likewise, the father of one of the victim’s neighborhood friends testified that he recognized the defendant from living in the neighborhood around the late 1990s. He testified that Mr. Wallace would call and leave harassing messages wanting to know the whereabouts of the victim. He also testified that Mr. Wallace admitted in one telephone conversation to having sex with the victim.
Furthermore, the State offered into evidence the MySpace messages Mr. Wallace began sending the victim in 2008.[2] In the messages, Mr. Wallace expressed regret for what he did and that he was sorry. He also expressed his love for the victim and that he wanted to have sex with her. Scared that Mr. Wallace would try to physically contact her, the victim contacted the police.
Mr. Wallace avers on appeal that the evidence was insufficient to prove that he committed the aggravated rape of B.B. between 1996 and 1998, because B.B. | inand her mother testified at trial that the events occurred in 2000. He further claims that B.B.’s mother testified that the only time Mr. Wallace would have had contact with her daughter was in 2000 when she was twelve years old. A review of the testimony proves otherwise.
B.B. testified that the sexual abuse began when she was around eight and nine years old and did not end until she was ten years old in 2000 when her mother “kicked [Mr. Wallace] out” of their house. The victim’s testimony establishes that she was under the age of twelve when the abuse occurred. Further, B.B. testified that Mr. Wallace “tried to penetrate [her] and it didn’t work.” Louisiana jurisprudence has determined:
Sexual penetration is a term of common and generally accepted meaning. State *1281 v. Prestridge, 399 So.2d 564 (La.1981). Any penetration, however slight, of the aperture of the female genitalia, even its external features, is sufficient. State v. Bertrand, 461 So.2d 1159 (La.App. 3rd Cir.1984); writ denied 464 So.2d 314 (La.1985).
State v. Anderson, 499 So.2d 1252, 1253 (La.App. 4th Cir.12/9/86). Viewing the evidence as a whole, a rational trier of fact could find beyond a reasonable doubt that penetration, even perceivably slight penetration, had occurred. Because the jury made a rational credibility determination, this Court will not disturb that conclusion on review. Thus, when considering the evidence as a whole, there was sufficient evidence for the jury to find Mr. Wallace guilty of the aggravated rape of B.B.

JURY INSTRUCTIONS

Despite this Court’s determination that the evidence is sufficient to support the jury’s verdict finding Mr. Wallace guilty of aggravated rape, it does not preclude our finding that the instructional error is not harmless. See State v. Holmes, 620 So.2d 436, 437 (La.App. 3rd Cir.6/9/1993) (“The problem with this Inconviction is not the sufficiency of the evidence. The problem is an erroneous jury charge ... Although we find that by Jackson v. Virginia standards, the evidence was sufficient to support a finding of a specific intent to kill, the jury did not have to make such a finding in order to convict.”).
The United States Supreme Court has previously recognized that “various forms” of instructional errors are subject to harmless error analysis. See Hedgpeth v. Pulido, 555 U.S. 57, 60-61, 129 S.Ct. 530, 532, 172 L.Ed.2d 388 (2008). The Supreme Court in Hedgpeth stated, “that harmless-error analysis applies to instructional errors so long as the error at issue does not categorically ‘ “vitiat[e] all the jury’s findings.” ’ ” Hedgpeth, 555 U.S. at 61, 129 S.Ct. at 532 (quoting Neder v. U.S., 527 U.S. 1, 11 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting Sullivan v. Louisiana, 508 U.S. 275, 281, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993))).
In Neder v. U.S., the jury instruction omitted an element of the offense. 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). The Supreme Court determined that “improperly omitting an element from the jury can ‘easily be analogized to improperly instructing the jury on an element of the offense, an error which is subject to harmless-error analysis.’” Id., 527 U.S. 1, 10, 119 S.Ct. 1827, 1834. The Supreme Court reasoned that “in both cases — misdescriptions and omissions — the erroneous instruction precludes the jury from making a finding on the actual element of the offense.” Id.
The burden of proving harmless error rests with the party benefitting from the error. See Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Lewis, 12-1021, p. 15-16 (La.3/19/13), 112 So.3d 796, 805. Therefore, the State has the burden of showing that the jury’s verdict was surely unattributable to the erroneous | ^instruction and that it does not affect the substantial rights of Mr. Wallace. See State v. Lewis, 12-1021, p. 15-16 (La.3/19/13), 112 So.3d 796, 806; La.C.Cr.P. art. 921. Notably, the State concedes that it is unable to meet its burden.
The specific error in this case is an error in the instruction that defined the crime. The trial court erroneously charged the jury on the offense of aggravated rape as it was defined in 2012, and not as the *1282 crime was defined at the time of the offense, in 1996-1998.
At the time of the offense, La. R.S. 14:41 defined rape as “the act of anal or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent.” Aggravated rape, pursuant to La. R.S. 14:42 as defined at the time of the offense, “is a rape committed upon a person sixty-five years of age or older or where the anal or vaginal sexual intercourse is deemed to be -without lawful consent of the victim because it is committed under any one or more of the following circumstances: ... where the victim is under the age of twelve years. Lack of knowledge of the victim’s age shall not be a defense.” In 2001, through Acts 2001 No. 301, La. R.S. 14:41 and 14:42 were amended to include oral sexual intercourse within the definition of rape.
This Court has previously held that the law in effect at the time of offense is controlling. See State v. Bagneris, 02-0773, 4-5 (La.App. 4 Cir. 10/16/02), 830 So.2d 1047, 1050. Further, “[t]he United States Supreme Court has held that the trial judge’s obligation in charging the jury is to charge the jury as to the law applicable to the offense charged and any other offense(s) which a juror could reasonably infer from the evidence.” State v. Bell, 543 So.2d 1013, 1017 (La.App.13 3rd Cir.4/19/89) (citing Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982)).
Mr. Wallace claims the trial court committed reversible error in charging the jury on the offense of aggravated rape as it was defined at the time of trial, rather than as it was defined at the time of the offense. Specifically, he objects to the trial court’s inclusion of oral sexual intercourse in its instructions on aggravated rape. The State concedes this assignment of error and goes so far as to aver that even in the absence of a contemporaneous objection, an issue discussed herein, “the error ... was so flagrant as to deprive [Mr. Wallace] of a fair trial.”
Throughout the jury charge, the trial court called to the jury’s attention, albeit erroneously, that the jury could convict Mr. Wallace of aggravated rape on a finding of oral sexual intercourse. Likewise, the trial court mistakenly instructed the jury that the victim must be under the age of thirteen and emphasized that penetration was not necessary to constitute oral sexual intercourse.
We find the trial judge failed to charge the jury with the applicable law in effect at the time of the offense. The jury instructions were entirely based on the definition of aggravated rape in 2012, not in 1996-1998. The trial court instructed the jury on aggravated rape as follows:
Aggravated rape is a rape committed upon a person sixty-five years or older or when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
Where the victim is under the age of thirteen years. Lack of knowledge of the victim’s age shall not be a defense.
Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. In lawyers vernacular it’s called big life. Everyday life. Okay?
| ^Aggravated rape by oral sexual intercourse. The defendant is charged with the aggravated rape of [B.B.]. Aggravated rape is the act of oral sexual *1283 intercourse with a person without their lawful consent, or, where the victim is prevented from resisting the act because the victim suffers from a physical or mental infirmity preventing such resistance. That includes a person with any kind of infirmity and lower IQ.
Oral sexual intercourse may be intentionally engaging in any of the following acts with another person:
The touching of the anus or genitals of the victim by the offender, using the mouth or tongue of the offender; or the touching of the anus or genitals of the offender by the victim, using the mouth or tongue of the victim.
Sexual intercourse is deemed to have taken place even though emission did not occur.
Thus, in order to convict the defendant of aggravated rape on these grounds you must find that the defendant committed an act of oral sexual intercourse with [B.B.] without her lawful consent, that she was incapable of consenting at that age, and that she was prevented from resisting, or under the age of thirteen. Aggravated rape is the act of anal or vaginal sexual intercourse with a person who is under the age of thirteen years of age. Sexual intercourse is deemed to have taken place even though emissions did not occur. Any anal or vaginal rape requires penetration, however so slight. Any penetration is sufficient. Penetration is not required on oral sexual rape. Do you understand that?
In order to convict the defendant of aggravated rape you must find that the defendant committed an act of anal or vaginal sexual intercourse and that she is under the age of 13 ...
(emphasis added).
As an initial matter, absent from the trial court’s instructions to the jury is the applicable definition of rape, an underlying element of the charged offense. The trial court also incorrectly instructed the jury that oral sexual intercourse is sufficient to constitute aggravated rape when that was not the case until the statute was amended in 2001. As a result, the trial court’s inclusion of the definition of oral sexual intercourse was also in error. The misstatement of the controlling law|1Bwas further impaired by drawing the jury’s attention to the misapplication of oral sexual rape in this case when the trial court cautiously instructed the jury: “Penetration is not required on oral sexual rape. Do you understand that?”
Additionally, the trial court misstated that the victim must be under the age of thirteen. It was not until the 2003 legislative session, however, that the age of the victim as an element of the crime was increased from twelve to thirteen.[3] Thus, the trial court’s misstatement that the victim must be under the age of thirteen rather than twelve was in error.
In light of the number of times the trial court called to the jury’s attention the erroneous instructions relating to the elements of aggravated rape, “the jury was given every opportunity to mistakenly apply the law.” Holmes, 620 So.2d at 437. The instructions were given to the jury without objection from either side. Nevertheless, Mr. Wallace argues that the inclusion of oral sexual intercourse in the definition of aggravated rape is plain error of constitutional proportion, and thus, reviewable even absent a contemporaneous objection. La.C.Cr.P. art. 841 provides that “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence.” See also State v. Arvie, 505 So.2d 44, 47 (La.1987).
*1284 The Court in Holmes was presented with a similar issue. The defendant in that case was charged with attempted second-degree murder. Although the court found sufficient evidence to convict the defendant of the crime charged, the inclusion of an erroneous requirement in the jury instructions of specific intent to inflict great bodily harm was reversible error. In Holmes, no contemporaneous objection was made at trial pursuant to La.C.Cr.P. art. 841. Relying on State v. Williamson, 389 So.2d 1328 (La.1980), the Holmes court recognized that the general rule requiring a contemporaneous objection “has an exception where the error is the very definition of the crime of which the defendant was in fact convicted, and where the record bears full and sufficient proof of the error which no posterior hearing could augment.” Id., 620 So.2d at 438.
Similarly, the error asserted on appellate review in this case is the very definition of the crime of which the defendant was convicted. As the Louisiana Supreme Court stated in Williamson,
Such an error is of such importance and significance as to violate fundamental requirements of due process.
Furthermore, to defer consideration until defendant were to file a writ of habe-as corpus would only serve to prolong the occasion when defendant might again be tried, with resultant prejudice to the state’s opportunity to reassemble its witnesses and evidence. For these reasons we find it preferable now to reverse defendant’s conviction and sentence and order him retried.
Because reversal of defendant’s conviction results not from evidentiary insufficiency but from trial court error, and upon defendant’s urging in brief on this appeal, he is subject to being retried for ... the crime of which [he was] convicted.
In State v. Johnson, 93-0394 (La.6/3/94), 637 So.2d 1033, the Louisiana Supreme Court reversed a conviction wherein the trial court charged the jury on distribution of counterfeit cocaine when the defendant was charged by bill of information with possession of cocaine with the intent to distribute. The Court found that “the trial court’s charge to the jury not only allowed it to convict the defendant for a new crime not charged in the original bill of information but it also invited jurors to convict the defendant under an improper definition of that offense.” Id., 93-0394, p. 1, 637 So.2d at 1034 (emphasis added). As reasoned in State v. Cavazos, 93-1371, p. 1 (La.12/10/92), 610 So.2d 127, 128, “a substantial | ^probability that jurors may have convicted [Mr. Wallace] under an incorrect definition of the crime justifies setting aside a conviction on due process grounds even in the absence of a contemporaneous objection.”
We do note that the Louisiana Supreme Court has cautioned courts in its application of Williamson. In State v. Thomas, 427 So.2d 428, 435 (La.1982), the Supreme Court noted that Williamson should not be interpreted as permitting appellate review of every constitutional -violation alleged and erroneous jury instruction claimed on first appeal without a contemporaneous objection. See also Holmes, 620 So.2d at 439; and State v. Belgard, 410 So.2d 720 (La.1982). In State v. Arvie, 505 So.2d 44, 47 (La.1987), the Supreme Court once again cautioned that Williamson did not create a plain error rule for blanket application; however, it reaffirmed Williamson noting:
[O]ne could hardly imagine an error which more seriously affects the fairness *1285 of a judicial proceeding or which is more prejudicial to the fundamental rights of an accused than a jury instruction which incorrectly defines the crime with which the accused is charged.
In this case, it remains unanswered whether the jury would have convicted Mr. Wallace if it had known oral sexual intercourse was not an element of the offense. The Holmes court cited Justice Lemmon’s concurrence to Williamson, reasoning “an affirmation, essentially based on the pragmatic notion that the jury reached the right result on the wrong instructions, simply does not comport with basic concepts of due process.” Holmes, 620 So.2d at 440. The trial court repeatedly drew the jury’s attention to the wrong definition of the law on aggravated rape. Despite finding the evidence sufficient to convict Mr. Wallace of aggravated rape, 11swe acknowledge that in view of the magnitude of the instructional error, Mr. Wallace was deprived due process and should be afforded a new trial.

DECREE

Accordingly, Mr. Wallace’s conviction and sentence are reversed, and the matter is remanded to the trial court for a new trial.[4]
REVERSED AND REMANDED.

. To protect the privacy of the victims of sex offenses, the victim is referred to by her initials, "B.B.”, or as "the victim.” The victim’s mother is referred to by her initials, and the victim’s sister is referred to by her initials as "K.B.” See La. R.S. 46:1844(W).

. In a separate assignment of error, Mr. Wallace claims that the State failed to lay the proper foundation for the MySpace messages to be admitted into evidence at trial. Given this Court’s finding that the present case should be remanded for new trial based on other trial errors, we pretermit discussion of this assignment of error raised on appeal.

. See La. R.S. 14:42(A)(4), as amended by Acts 2003, No. 795.

. Given this Court’s finding that Mr. Wallace is entitled to a new trial based on the trial court’s instructional error, we pretermit discussion of the ineffective assistance of counsel and the erroneous admission of evidence claims.